1
2
3
4
5

FINKELSTEIN & KRINSK LLP
Keia J. Atkinson (SBN 316649)
kja@classactionlaw.com
John J. Nelson (SBN  317598)
jjn@classactionlaw.com
501 West Broadway, Ste. 1260
San Diego, CA 92101
Telephone: (619) 238-1333
Facsimile:  (619) 238-5425

6  *Attorneys for Plaintiff*

7

8  ## UNITED STATES DISTRICT COURT

9  ## SOUTHERN DISTRICT OF CALIFORNIA

10  Jesika Vado, Individually and on Behalf of All Others Similarly Situated,

11                   Plaintiff,

12  v.

13  Frito-Lay Inc., a Delaware corporation,

14                Defendants.

Case No.:  '20 CV 2055 MMA BLM

**CLASS ACTION COMPLAINT FOR:**

**(1)  Unlawful Business Practices (Cal. Bus. & Prof. Code §§17200, *et seq.*)**

**(2)  Unfair Business Practices (Cal. Bus. & Prof. Code §§17200, *et seq.*)**

**(3)  Misleading Advertising (Cal. Bus. & Prof. Code §§17500, *et seq.*)**

**(4)  Untrue Advertising (Cal. Bus. & Prof. Code §§17500, *et seq.*)**

**(5)  Violation of the Consumer Legal Remedies Act, Cal. Civ. Code §§1750. *et seq.***

**(6) Restitution Based on Quasi-Contract/ Unjust Enrichment**

**DEMAND FOR JURY TRIAL**

Plaintiff alleges, upon information and belief except for allegations pertaining to plaintiff which are based on personal knowledge, against Defendant Frito-Lay, Inc.:

## INTRODUCTION

1.  Frito-Lay, Inc. ("Defendant") is a subsidiary of multinational food conglomerate PepsiCo that manufactures, distributes, markets, labels and sells a variety of snacks, crackers, dips, and other products for the wholesale and retail markets.  Among the products it offers, Defendant markets, distributes, and sells potato crisps under its "Ruffles" brand labeled as "Baked Lays Cheddar & Sour Cream Flavor" potato crisps (hereinafter the "Mislabeled Product").

2.  The Mislabeled Product purports to be "Cheddar and Sour Cream Flavored" and contains numerous representations regarding that fact, including both words and images included on the front label of the package.  On information and belief, Defendant earns millions of dollars each year within this jurisdiction selling the Mislabeled Product.

3.  Under the applicable laws and regulations, labeling a food product as containing a particular "flavor" represents that the product is the result of natural flavor compounds.  In the instant case, "Cheddar and Sour Cream Flavor," without more, represents that the flavor components included therein are the result of natural flavors.

4.  Customer demand and the resulting market pressures have caused manufacturers of consumer goods to increasingly remove artificial flavors and dyes as a way to appeal to consumers who prefer to purchase "natural" products; this includes consumers of snack products like those manufactured, marketed, distributed, and sold by Defendant, such as the Mislabeled Product.

5.  However, the "Sour Cream" flavor within the Mislabeled Product is produced and/or affected by artificial diacetyl, an artificial flavoring compound.  Accordingly, the "Sour Cream" flavor in the Mislabeled Product is not "natural."

6. Defendant produces and distributes other "Cheddar and Sour Cream" flavored potato crisps that are labeled in the same way as the Mislabeled Product; on information and belief, the aforementioned products are flavored with a natural sour cream flavor compound, indicating that Defendant is and was or should have been aware of the misrepresentations contained on the packaging of the Mislabeled Product.

7. As a result of this mislabeling and the misrepresentations contained therein, Plaintiff and California consumers were convinced to and did pay a premium to purchase what they believed is and was a naturally flavored product, to the benefit and profit of Defendant, and as a result are entitled to any remedies available under any and all applicable laws and regulations.

## GENERAL ALLEGATIONS

8. Frito-Lay, Inc., a subsidiary of multinational food conglomerate PepsiCo, manufactures, distributes, markets, labels and sells potato crisps under its "Ruffles" brand labeled as "Baked Lays Cheddar & Sour Cream Flavor" potato crisps.

9. In spite of the product's misrepresentation to the contrary, Defendant's "Ruffles" brand "Baked Lays Cheddar & Sour Cream Flavor" potato crisps does not derive its principal flavor components from natural sources; instead the product's "Sour Cream" flavor is the result of an artificial compound resulting in the mislabeling of the "Baked Lays Cheddar & Sour Cream Flavor" potato crisps ("Mislabeled Product").

10. The Mislabeled Product is available to consumers from retail and online stores of third-parties and is sold in various sizes.

11. The relevant front label representations include "Cheddar & Sour Cream," "Flavored," "Baked," "65% Less Fat Than Regular Potato Chips," a wedge

of cheddar cheese, a bowl of sour cream and an orange and white color pattern reflective of the colors associated with cheddar cheese and sour cream.



12.   According to reports, and in response to consumer demands for naturally sourced foods, "Food companies are dropping artificial flavors, coloring, preservatives and other additives with scary names and focusing more on natural, wholesome and fresh ingredients."[1]

13.   Consumers are increasingly seeking products that obtain their flavor from their characterizing food ingredients, i.e., strawberry shortcake with strawberries or natural strawberry flavor from strawberries as opposed to strawberry flavor synthesized from cherries.[2]

14.   Indeed, Nielsen has reported that 62% of consumers say they try to avoid

---

[1] Jeff Daniels, Why your favorite foods may be getting new recipes, CNBC, September 19, 2016
[2] David Andrews, Synthetic ingredients in Natural Flavors and Natural Flavors in Artificial flavors, Environmental Working Group (EWG).

COMPLAINT
4

artificial flavors.[3]

15.   New Hope Network, a market research group, concluded that "71% of consumers today are avoiding artificial flavors."[4]

16.   Label Insight determined that 76% of consumers avoid artificial flavors.[5]

17.   Consumer preference for avoiding artificial flavors applies to dairy products and foods that contain dairy products or dairy flavors, because consumers expect dairy products and flavors to contain the minimally necessary ingredients and to be free from synthetic ingredients and harsh processing due to their association with cows and milk rather than chemistry labs.

18.   Sour cream is a cultured dairy product used as a condiment, as an ingredient in various foods, such as sauces, and in baking.

19.   Sour cream "results from the souring, by lactic acid producing bacteria, of pasteurized cream."

20.   The lactic acid bacteria in sour cream produces its "primary desirable aroma compound…diacetyl (2,3 di-butanone)."[6]

21.   Diacetyl is known as the main flavor compound in butter and is used in its synthetic form as an artificial flavor in food.[7]

22.   The flavor of sour cream relies on a balance between "proper culture selection, close control of the lactic acid development, along with the proper composition of the cream."[8]

23.   The lactic acid bacteria which "produce diacetyl are often described as citrate fermenters, or in shorthand, cit+."[9]

---

[3] Nielsen, Reaching For Real Ingredients: Avoiding The Artificial, Sept. 6, 2016.
[4] Alex Smolokoff, Natural color and flavor trends in food and beverage, Natural Products Insider, Oct. 11, 2019.
[5] Thea Bourianne, Exploring today's top ingredient trends and how they fit into our health-conscious world, March 26-28, 2018.
[6] M.J. Costello, Sour Cream and Related Products, p. 406 in Bodyfelt (ed.) The Sensory Evaluation of Dairy Products, Spring
[7] Artificial Butter Flavorings (ABF) Components, National Toxicology Program.
[8] Id.
[9] Id.

24.   This "buttery note in sour cream derives from diacetyl production via citrate metabolism by citrate fermenting (cit+) lactic acid bacteria."

25.   Scholars and evaluators of dairy products recognize that the "characteristic flavor of a quality sour cream should include a subtle to moderate acid note *and a buttery (diacetyl) aroma*."[10] *See* M.J. Costello, Sour Cream and Related Products, M. Bodyfelt (ed.), *The Sensory Evaluation of Dairy Products*, Springer (2008) (emphasis added).

26.   According to Costello, "The primary desirable aroma compound in sour cream (and likewise cultured buttermilk) is diacetyl (2,3 di-butanone)."[11]

27.   Sour cream that lacks this butter flavor is described by most consumers as "flat" and "lack[ing] cultured flavor" by professional dairy flavor evaluators.[12]

28.   In the chapter entitled "Sour Cream and Crème Fraîche" in the Handbook of Animal- Based Fermented Food and Beverage Technology, sour cream is described as having a "balanced, pleasant, buttery-like (diacetyl) aroma."[13]

29.   In the Encyclopedia of Food Microbiology's chapter on Fermented Milks, the author states that diacetyl is recognized "as the major flavor compound" in sour cream.[14]

30.   According to a consumer survey, a "sour cream that would appeal to most consumers is characterized by moderate to high levels of diacetyl." L. Shepard, et al. "*Relating sensory and chemical properties of sour cream to consumer acceptance*," Journal of Dairy Science, 96.9 (2013): 5435-5454.

31.   To produce sour cream with high levels of diacetyl requires adequate citrate in the cream prior to fermentation, which is based upon the diet of the cows.

---

[10] *Id.*
[11] Costello at 406 (emphasis added).
[12] *Id.*
[13] Lisbeth Meunier-Goddik, Sour Cream and Crème Fraîche in Yiu H. Hui (ed.), Handbook of Animal-Based Fermented Food and Beverage Technology Vol. 2. CRC Press (2012).
[14] J.A. Narvhus, Fermented Milks in Richard K. Robinson (ed.), Encyclopedia of food microbiology, Academic Press, (2014).

32.   In other words, cows which can graze freely on pasture – instead of in feedlots – will provide the base for a sour cream which is naturally higher in diacetyl.

33.   However, pasture raised cows are more costly because they require more space per cow and have longer life spans than cows who lack this benefit.

34.   To produce sour cream with its essential diacetyl flavor from cows who are not provided a pasture diet requires the addition of artificial diacetyl flavor.

35.   Defendant's Mislabeled Product makes direct representations on the Mislabeled Product's label with respect to one of its "primary recognizable flavor(s)," sour cream, through images and photos contained therein, including but not limited to: the image of a dollop of sour cream; the image of the block of cheddar cheese; the word "Sour Cream"; and the white background of half the front label, contrasted with the orange of the bottom half of the label, corresponding to the orange-colored cheddar cheese. *See* 21 C.F.R. § 101.22(i).

36.   Sour cream is the Mislabeled Product's "characterizing flavor." *See* 21 C.F.R. § 101.22(i).

37.   Consumers are misled by the Mislabeled Product's representation as "Flavored" because this gives them the impression that actual sour cream is the principal source of the flavor.

38.   Natural sour cream flavor is "the essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the flavoring constituents derived from…dairy products, or fermentation products thereof, whose significant function in food is flavoring rather than nutritional." *See* 21 C.F.R. § 101.22(a)(3).

39.   However, the Mislabeled Product's sour cream flavor is provided by artificial flavor, in the form of synthetic diacetyl.

40.   The artificial diacetyl is present in significant amounts such that it could not be the result of butter or butter flavor. *See* M. W. Rigler et al., *Emission of Diacetyl (2,3 butanedione) from Natural Butter, Microwave Popcorn Butter Flavor*

*Powder, Paste, and Liquid Products*, International Journal of Occupational and Environmental Health, (2010) 16(3), p. 301.

41.  Natural butter is commonly recognized to contain "up to 7500 times less diacetyl" than artificial diacetyl.[15]

42.  The Mislabeled Product's back label ingredient list shows the Mislabeled Product contains "Artificial Flavors."

**INGREDIENTS:** DRIED POTATOES, CORN STARCH, CORN OIL, SUGAR, MALTODEXTRIN (MADE FROM CORN), SALT, SOY LECITHIN, DEXTROSE, WHEY, WHEY PROTEIN CONCENTRATE, CHEDDAR CHEESE (MILK, CHEESE CULTURE, SALT, ENZYMES), MONOSODIUM GLUTAMATE, ONION POWDER, BLUE CHEESE (MILK, CHEESE CULTURES, SALT, ENZYMES), CITRIC ACID, ARTIFICIAL COLOR (INCLUDING YELLOW 6 LAKE, YELLOW 5 LAKE, YELLOW 5, YELLOW 6), SKIM MILK, NATURAL AND ARTIFICIAL FLAVORS, GARLIC POWDER, LACTIC ACID, DISODIUM INOSINATE, AND DISODIUM GUANYLATE.

43.  Because the Mislabeled Product has artificial diacetyl, which is the main flavor compound in sour cream, the front label is deceptive and misleading

---

[15] M. W. Rigler et al., *Emission of Diacetyl (2,3 butanedione) from Natural Butter, Microwave Popcorn Butter Flavor Powder, Paste, and Liquid Products*, International Journal of Occupational and Environmental Health (2010) 16(3).

because it fails to disclose the presence of this artificial flavor.

44.    Federal regulations, mirrored by those of California State, require that consumers be informed whenever a food "contains any artificial flavor which simulates, resembles or reinforces the characterizing flavor." 21 C.F.R. § 101.22(i)(2).

45.    Artificial diacetyl flavor simulates, resembles and reinforces the characterizing flavor of sour cream, and is required to be disclosed on the front label, i.e., "Cheddar and 'Artificial Sour Cream Flavored'" or in a similar way. 21 C.F.R. § 101.22(i)(2) ("the name of the characterizing flavor shall be accompanied by the word(s) 'artificial' or 'artificially flavored', in letters not less than one-half the height of the letters in the name of the characterizing flavor, e.g., 'artificial vanilla', 'artificially flavored strawberry', or 'grape artificially flavored'.").

46.    Reasonable consumers do not expect a product which only uses the term "flavored" to contain artificial flavors, because they would expect the company to tell the whole truth, instead of a half-truth.

47.    Reasonable consumers are not capable of determining that the Mislabeled Product's artificial diacetyl flavor is what produces and/or contributes to the product's characterizing flavor of sour cream.

48.    Consumers are forced to rely upon the full disclosure of companies who use artificial flavor, because the presence of artificial flavor which affects a food's characterizing flavor has a material bearing on price and consumer acceptance of a food.

49.    Other brands of cheddar and sour cream ridged potato chips contain cheddar and sour cream flavoring with artificial flavor and identify their products as "Artificially Flavored" because the artificial flavor affects the characterizing flavor, on their front label.

50.    These competitor products have the same flavor composition as the Mislabeled Product here, but do not hide their artificial flavor on the ingredient list.

51.   Defendant Frito-Lay Inc. also sells another variety of Cheddar and Sour Cream flavored potato crisps under its Ruffles brand that contains the same representations as the Mislabeled Product's flavor on the front label (i.e. Cheddar and Sour Cream Flavored) and also shows a chunk of cheddar cheese and a dollop of sour cream to demonstrate its representative flavors. However, this product is distinguishable from the Mislabeled Product because it actually contains sour cream and unlike the Mislabeled Product, real sour cream is listed as an ingredient on the back-label ingredient list.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

## INGREDIENTS                                              ⌄

Potatoes, Vegetable Oil (Sunflower, Corn, and/or Canola Oil), Cheddar & Sour Cream Seasoning (Maltodextrin [Made from Corn], Salt, Whey, Cheddar Cheese [Milk, Cheese Cultures, Salt, Enzymes], Onion Powder, Corn Oil, Monosodium Glutamate, Natural and Artificial Flavors, Buttermilk, Canola Oil, Sour Cream [Cultured Cream, Skim Milk], Lactose, Butter [Cream, Salt], Sodium Caseinate, Yeast Extract, Citric Acid, Skim Milk, Blue Cheese [Milk, Cheese Cultures, Salt, Enzymes], Lactic Acid, Garlic Powder, Artificial Color [Including Yellow 6, Yellow 5], Whey Protein Isolate, Sunflower Oil, and Milk Protein Concentrate). CONTAINS MILK INGREDIENTS.

52. Defendant knows consumers will pay a premium for the Mislabeled Product because the label does not state "artificially flavored sour cream" or

"artificial flavor."

53.   Defendant's branding and packaging of the Mislabeled Product is designed to – and does – deceive, mislead, and defraud plaintiff and consumers.

54.   Defendant sold more of the Mislabeled Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers like Plaintiff.

55.   The value of the Mislabeled Product that plaintiff purchased and consumed was materially less than its value as represented by Defendant.

56.   Had Plaintiff and class members known the true qualities and characteristics of the Mislabeled Products, they would not have bought them or would have paid less for them.

57.   As a result of the false and misleading labeling, the Mislabeled Product is sold at a premium price, compared to other similar products represented in a non-misleading way, and higher than the price of the Mislabeled Product if it were represented in a non-misleading way.

**Jurisdiction and Venue**

58.   Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

59.   Under CAFA, district courts have original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity.

60.   Plaintiff Jesika Vado is a citizen of California.

61.   Defendant Frito-Lay, Inc., is a Delaware corporation with a principal place of business in Plano, Collin County, Texas and is a citizen of Texas.

62.   "Minimal diversity" exists because plaintiff and defendant are citizens of different states.

63.   Upon information and belief, sales of the Mislabeled Product in California exceed $5 million per year, exclusive of interest and costs.

64.   Venue is proper in this judicial district because a substantial part of the events or omissions giving rise to the claim occurred in this District, *viz*, the decision of plaintiff to purchase the Product and the misleading representations and/or their recognition as such.

65.   This court has personal jurisdiction over defendant because it conducts and transacts business, and contracts to supply and supplies and distributes goods within California.

Parties

66.   Plaintiff Jesika Vado is a citizen of San Diego, California.

67.   Defendant Frito-Lay, Inc. is a Delaware corporation with a principal place of business in Plano, Texas, Collin County and is a citizen of Texas.

68.   During the relevant statutes of limitations, Plaintiff purchased the Mislabeled Product within this district and State for personal and household consumption and/or use in reliance on the representations of the Mislabeled Product.

69.   Plaintiff purchased the Mislabeled Product on one or more occasions, during the relevant period, at corner stores, convenience stores, and supermarkets between 2018 and 2020.

70.   Plaintiff purchased the Mislabeled Product on occasions including but not necessarily limited to April, 2020, at stores including Vons located at 3645 Midway Drive, San Diego, CA and various other Von locations in California and 7-11 locations in San Diego, County and California.

71.   Plaintiff bought the Mislabeled Product at or exceeding the above-referenced prices because she liked the product for its intended use and expected it to not contain artificial flavors that affected the flavors identified by the front label, *viz*, sour cream.

72.   Plaintiff was deceived by and relied upon the Mislabeled Product's deceptive labeling.

73.   The Mislabeled Product was worth less than what Plaintiff paid for it and she would not have purchased it or would not have paid as much absent Defendant's false and misleading statements and omissions

74.   Plaintiff intends to, seeks to, and will purchase the Mislabeled Product again when he can do so with the assurance that Product's labels are consistent with the Mislabeled Product's components.

<u>Class Allegations</u>

75.   The class consists of all purchasers of the Mislabeled Product who are or were residents of California during the applicable statutes of limitations.

76.   Plaintiff seeks class-wide injunctive relief pursuant to Rule 23(b) in addition to a monetary relief class.

77.   Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

78.   Plaintiff's claims and basis for relief are typical to other members of the class because all were subjected to the same unfair and deceptive representations and actions.

79.   Plaintiff is an adequate representative because Plaintiff's interests do not conflict with other members.

80.   No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

81.   Individual actions would risk inconsistent results and be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

82.   Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

83.   Plaintiff seeks class-wide injunctive relief because the practices continue and are not reasonably avoided by consumers.

# CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION
### Unlawful Business Practices in Violation of
### Business and Professions Code §§17200, *et seq.*

84.   Plaintiff incorporates by reference each allegation set forth above.

85.   Defendant's conduct constitutes unlawful business acts and practices under Cal. Business & Professions Code §§17200, *et seq*.

86.   Defendant sold Mislabeled Products in California during the class period.

87.   Defendant Frito-Lay is a corporation and, therefore, is a "person" within the meaning of the Sherman Food Drug & Cosmetic Law Act, California Health & Safety Code §§109875, *et seq.* (the "Sherman Act"). The Sherman Act adopts, incorporates and is identical to the federal Food, Drug & Cosmetic Act, 21 U.S.C. §§301, *et seq.* ("FDCA").

88.   Defendant's business practices are unlawful under the UCL, §§17200, *et seq.*, by virtue of Defendant's violations of the advertising provisions of Article 3 of the Sherman Act and the misbranded food provisions of Article 6 of the Sherman Act.

89.   Defendant's business practices are also unlawful under Business & Professions Code §§17200, *et seq.* by virtue of Defendant's violations of §§17500, *et seq.*, which forbids untrue and misleading advertising.

90.   Defendant's business practices are additionally unlawful under Business & Professions Code §§17200, *et seq.* by virtue of Defendant's violations of the Consumers Legal Remedies Act, Cal. Civ. Code §§1750, *et seq.*

91.   Under California law, a food product that is misbranded cannot legally be manufactured, advertised, distributed, held or sold. Mislabeled Products cannot be legally sold, possessed, have no economic value, and are legally worthless. Indeed, the sale, purchase or possession of misbranded food is a criminal act in California and the FDA even threatens food companies with seizure of Mislabeled Products.

92.   Plaintiff and the members of the putative class who purchased Defendant's

Mislabeled Products had no way of reasonably knowing that the products were misbranded and were not properly marketed, advertised, packaged and labeled, and thus could not have reasonably avoided the injury each of them suffered.

93.   Defendant sold Plaintiff and members of the putative class Mislabeled Products that were not properly being sold or legally held and which had no economic value and were legally worthless. Plaintiff and each putative class member relied on Defendant's misrepresentations and omissions when deciding whether to purchase the Mislabeled Products and paid a premium price as a result.

94.   As a result of Defendant's illegal business practices, Plaintiff and the members of the putative class are entitled to an order enjoining such future conduct and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and to restore to any putative class member the money paid for the Mislabeled Products.

95.   Defendant's unlawful business acts present a threat and reasonable continued likelihood of injury to Plaintiff and each member of the putative class.

### SECOND CAUSE OF ACTION
**Unfair Business Practices in Violation of**
**Business & Professions Code §§17200, *et seq*.**

96.   Plaintiff incorporates by reference each allegation set forth above.

97.   The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising.  Cal. Bus. & Prof. Code §17200.

98.   A business act or practice is "unfair" under the UCL if the reasons, justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

99.   Defendant's conduct as set forth herein constitutes unfair business acts and practices.

100. Defendant sold Mislabeled Products in California during the class period.

101. Plaintiff and the members of the putative class suffered substantial injury

by virtue of buying Defendant's Mislabeled Products, which they would not have purchased absent Defendant's illegal conduct, misrepresentations, and omissions.

102. Defendant's deceptive marketing, advertising, packaging and labeling of their Mislabeled Products and their sale of unsalable Mislabeled Products that were illegal to possess were of no benefit to consumers, and the harm to consumers and competition is substantial and outweighed by any benefits.

103. Defendant sold Plaintiff and the members of the putative class Mislabeled Products that were not capable of being legally sold or held and that had no economic value and were legally worthless. Plaintiff and the members of the putative class paid a premium price for the Mislabeled Products.

104. Plaintiff and the members of the putative class purchasing Defendant's Mislabeled Products had no way of reasonably knowing that the products were misbranded and were not properly marketed, advertised, packaged, and labeled, and thus could not have reasonably avoided the injury each of them suffered.

105. The consequences of Defendant's conduct as set forth herein outweigh any justification, motive or reason therefor. Defendant's conduct is and continues to be unlawful, unscrupulous and contrary to public policy, and is substantially injurious to Plaintiff and the members of the putative class, or otherwise.

106. As a result of Defendant's conduct, Plaintiff and the members of the putative class, pursuant to Business and Professions Code §17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Mislabeled Products by Plaintiff and the members of the putative class.

### THIRD CAUSE OF ACTION
### False Advertising/Violation of
### Business and Professions Code §§17500, *et seq.*

107. Plaintiff incorporates by reference each allegation set forth above.

108. Plaintiff asserts this cause of action for violations of California Business

and Professions Code §§17500, *et seq.,* for misleading and deceptive advertising by Defendant.

109. Defendant sold Mislabeled Products in California during the class period. Defendant engaged in a scheme of offering the Mislabeled Products for sale to Plaintiff and the members of the putative class by way of, *inter alia*, improper product packaging and labeling, and other promotional materials. These materials misrepresented and/or omitted the true contents and nature of Defendant's Mislabeled Products.

110. Defendant's advertisements and inducements were made within California and come within the definition of advertising as contained in Business and Professions Code §§17500, *et seq.,* in that such product packaging and labeling, and promotional materials were intended as inducements to purchase Defendant's Misbranded Food Products and are statements disseminated by Defendant to Plaintiff and the members of the putative class that were intended to reach the members of the putative class. Defendant knew, or in the exercise of reasonable care should have known, that these statements were misleading and deceptive as set forth herein.

111. In furtherance of its plan and scheme, Defendant prepared and distributed within California via product packaging and labeling, and other promotional materials, statements that misleadingly and deceptively represented the composition and the nature of Defendant's Mislabeled Products. Plaintiff and members of the putative class necessarily and reasonably relied on Defendant's material representations and omissions and were the intended targets of such misrepresentations.

*112.* Defendant's conduct in disseminating misleading and deceptive statements in California and nationwide to Plaintiff and the members of the putative class was and is likely to deceive reasonable consumers by obfuscating the true composition and nature of Defendant's Mislabeled Products, in violation of the "misleading prong" of California Business and Professions Code §§17500, *et seq.*

113. As a result of Defendant's violations of the "misleading prong" of California Business and Professions Code §§17500, *et seq.,* Defendant has been

unjustly enriched at the expense of Plaintiff and the members of the putative class. Mislabeled Products cannot be legally sold or held and have no economic value and are legally worthless. Plaintiff and the members of each Class paid a premium price for the Mislabeled Products.

114. Plaintiff and the members of the putative class, pursuant to Business and Professions Code §17535, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore money paid for Defendant's Misbranded Food Products by Plaintiff and the members of the putative class.

**FOURTH CAUSE OF ACTION**
**Untrue Advertising in Violation of**
**Business and Professions Code §§17500, _et seq._**

115. Plaintiff incorporates by reference each allegation set forth above.

116. Plaintiff asserts this cause of action against Defendant for violations of California Business and Professions Code §§17500, _et seq.,_ regarding untrue advertising. Defendant sold Mislabeled Products in California during the class period.

117. Defendant engaged in a scheme of offering Defendant's Mislabeled Products for sale to Plaintiff and the members of the putative class by way of product packaging and labeling, and other promotional materials. These materials misrepresented and/or omitted the true contents and nature of Defendant's Mislabeled Products. Defendant's advertisements and inducements were made in California and come within the definition of advertising as contained in Business and Professions Code §§17500, _et seq.,_ in that the product packaging, labeling, and promotional materials were intended as inducements to purchase Defendant's Mislabeled Product and are statements disseminated by Defendant to Plaintiff and the members of the putative class. Defendant knew, or in the exercise of reasonable care should have known, that these statements were untrue.

118. In furtherance of its plan and scheme, Defendant prepared and distributed in California and nationwide via product packaging and labeling, and other promotional

materials, statements that falsely advertise the composition of Defendant's Mislabeled Products, and falsely misrepresented the nature of those products. Plaintiff and the members of the putative class were the intended targets of such representations and would be, and were, reasonably deceived by Defendant's acts and omissions.

119. Defendant's conduct in disseminating untrue advertising throughout California deceived Plaintiff and the members of the putative class by obfuscating the contents, nature, and quality of Defendant's Mislabeled Products, in violation of the "untrue prong" of California Business and Professions Code §17500.

120. As a result of Defendant's violations of the "untrue prong" of California Business and Professions Code §§17500, *et seq.,* Defendant has been unjustly enriched at the expense of Plaintiff and the members of the putative class. Mislabeled Products cannot be legally sold or held and have no economic value and are legally worthless. Plaintiff and the members of the putative class paid a premium price for the Mislabeled Products.

121. Plaintiff and the members of the putative class, pursuant to Business and Professions Code §§17535, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by Plaintiff and the members of the putative class.

## FIFTH CAUSE OF ACTION
### Violation of the Consumers Legal Remedies Act, California Civil Code §§1750, *et seq.*

122. Plaintiff incorporates by reference each allegation set forth above.

123. This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §§1750, *et seq.* (the "CLRA").

124. Plaintiff and each member of the putative class are "consumers" within the meaning of Civil Code §1761(d).

125. The purchases of the Defendant's Mislabeled Products by consumers constitute "transactions" within the meaning of Civil Code §1761 (e), and the

Mislabeled Products offered by Defendant constitute "goods" within the meaning of Civil Code§1761(a).

126. Defendant has violated, and continues to violate, the CLRA in at least the following respects:

    a.   In violation of Civil Code §1770(a)(5), Defendant represented that the Mislabeled Products had characteristics which they did not have;

    b.   In violation of Civil Code §1770(a)(7), Defendant represented that the Mislabeled Products were of a particular standard, quality, or grade, of which they were not; and

    c.   In violation of Civil Code §1770(a)(9), Defendant advertised the Mislabeled Products with the intent not to provide what it advertised.

127. As a direct and proximate cause of Defendant's violation of the CLRA as alleged herein, Plaintiff and members of the putative class have suffered harm by Defendant's efforts to induce them to purchase the Mislabeled Products and to pay a premium price thereon when such products did not conform to either Defendant's representations or consumer expectations. As a result, Plaintiff, at this time, seeks injunctive relief against Defendant requiring them to cease and desist from further instances of advertising and selling the Mislabeled Products in California.

128. In addition, concurrent and in conjunction with the filing of this Complaint, pursuant to §1782(a) of the CLRA, Plaintiff will separately notify Defendant by certified mail, return receipt requested, of the particular violations of §1770 of the CLRA and demands that Defendant remedy the actions described above and give notice to all similarly affected California consumers of its intention to do so.

129. If Defendant fails to respond to Plaintiff's demand within 30 days of this notice, pursuant to §1782(d) of the CLRA, Plaintiff will amend this Complaint to request actual damages, plus punitive damages, interest and attorneys' fees. Additionally, Plaintiff will seek to recover up to $5,000 per eligible Class members as provided for under §1780(b) of the CLRA.  Accordingly, at the present time (and

without prejudice to Plaintiff's right to further amendment), pursuant to §1782(d) of the CLRA, Plaintiff seeks an order enjoining the above-described wrongful acts and practices of Defendant, plus costs and attorneys' fees, and any other relief which the Court deems appropriate.

### SIXTH CAUSE OF ACTION
### Restitution (Quasi-Contract)/Unjust Enrichment

130. Plaintiff incorporates by reference each allegation set forth above.

131. Defendant's conduct in enticing Plaintiff and putative class members to purchase the Mislabeled Products through their false and misleading advertising and packaging as described throughout this Complaint is unlawful because the statements contained on Defendant's product labels were untrue.

132. Defendant took monies from Plaintiff and members of the putative class for products that purported to comply with the representations set forth above, even though the Mislabeled Products did not conform to their representations.

133. Defendant has been unjustly enriched at the expense of Plaintiff and the putative class as result of Defendant's unlawful conduct alleged herein, thereby creating a quasi-contractual obligation on Defendant to restore these ill-gotten gains to Plaintiff and putative class members.

134. As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and putative class members are entitled to restitution or restitutionary disgorgement, in an amount to be proved at trial.

### JURY TRIAL DEMAND

135. Plaintiff demands a trial by jury for all of the claims asserted in this Complaint so triable.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and on behalf of the other members of the putative class, pray as follows:

A. For an order certifying that this action is properly brought and may be maintained

as a class action, that Plaintiff be appointed the Class Representative, and that Plaintiff's counsel be appointed counsel for the class;

B. For restitution in such amount that Plaintiff and all putative class members paid to purchase the Mislabeled Product, or the premiums paid therefor on account of the misrepresentation as alleged above, or restitutionary disgorgement of the profits Defendant have obtained from those transactions;

C. For compensatory damages for causes of action for which they are available;

D. For injunctive relief allowable under Civil Code §1780;

E. For punitive damages for causes of action for which they are available;

F. For a declaration and order enjoining Defendant from advertising their products misleadingly in violation of California's Sherman Food, Drug, and Cosmetic Law, and other applicable laws and regulations as specified in this Complaint;

G. For an order awarding reasonable attorneys' fees and the costs of suit herein;

H. For an award of pre- and post-judgment interest;

I. For an order requiring an accounting for, and imposition of, a constructive trust upon all monies received by Defendant's as a result of the unfair, misleading, fraudulent and unlawful conduct alleged herein; and

J. Such other and further relief as may be deemed necessary or appropriate.

Respectfully submitted,

FINKELSTEIN & KRINSK LLP

Dated: October 16, 2020          By: _____

Keia James Atkinson, Esq.
John J. Nelson, Esq.

*Attorneys for Plaintiff and the Putative Class*